# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 23, 2013 Session

## CHARLES NASH v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Hamilton County
### No. 277377    Don W. Poole, Judge

---

### No. E2012-02511-CCA-R3-PC - Filed September 20, 2013

---

Charles Nash ("the Petitioner") filed a petition for post-conviction relief from his convictions for first degree murder and especially aggravated robbery. After an evidentiary hearing, the post-conviction court denied relief. The Petitioner appealed, claiming that he is entitled to relief because his lawyer provided ineffective assistance of counsel with regard to a motion to suppress, in failing to object to the State's closing arguments, and in failing to present a defense of duress. Upon our thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment
### of the Criminal Court Affirmed; Remanded

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellant, Charles Nash.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William H. Cox, District Attorney General; and Neal Pinkston, Executive Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

A jury convicted the Petitioner of first degree murder[1] and especially aggravated robbery in October 2007. These charges arose out of the Petitioner's February 2006 armed robbery of the Okie Dokie Market in Chattanooga in which the clerk was shot and killed. The trial court sentenced the Petitioner to life imprisonment for the murder conviction and to a concurrent term of twenty-five years for the especially aggravated robbery conviction. This Court affirmed the Petitioner's convictions and sentence on direct appeal. See State v. Charles Nash, No. E2008-00951-CCA-R3-CD, 2009 WL 2461178, at *5 (Tenn. Crim. App. Aug. 12, 2009), perm. app. denied (Tenn. Mar. 1, 2010).

Because the direct appeal addressed only the trial court's denial of the Petitioner's motion to suppress, this Court's opinion does not contain a summary of the proof adduced at trial. The record of the trial is before us, however, and contains the Petitioner's statement to the police, which was admitted into evidence. The Petitioner explained that he robbed the store because a drug dealer had threatened to kill his grandmother if the Petitioner did not pay him $10,000. During the robbery, he placed his gun on the store counter, and the clerk "tried to grab it." The Petitioner stated that the gun then "started going off," and he asserted that he "didn't even know the gun was loaded." The Petitioner thought the gun fired twice. He stated that he had had no intention of harming the clerk but that he just intended to rob the store. The record also includes testimony by Dr. Amy McMaster, who performed the autopsy on the store clerk shooting victim. Dr. McMaster testified that the victim had died as the result of multiple gunshot wounds: three that entered her back, one that entered her abdomen, and one that entered her left elbow. The three gunshots that entered the victim's back were fatal wounds.

After his convictions were affirmed on direct appeal, the Petitioner filed the instant petition for post-conviction relief in August 2010. At the ensuing evidentiary hearing, the following proof was adduced:[2]

The Petitioner's trial counsel ("Counsel") testified that he was licensed to practice law in both Tennessee and Georgia and that his practice consisted of "insurance defense

---

[1] The Petitioner was charged with alternative counts of first degree premeditated murder and first degree felony murder. The jury convicted the Petitioner of both counts, and the trial court subsequently merged the convictions.

[2] We have limited our recitation of the proof to that which is relevant to the issues properly before us.

litigation, business litigation and criminal defense work." As of the time of the hearing in 2012, he had been licensed for twenty years. At the time he was appointed to represent the Petitioner, he had participated in over one hundred trials.

Counsel was appointed to represent the Petitioner after the Petitioner developed a disagreement with his initial lawyer. Counsel obtained the Petitioner's file, including discovery, and gave copies of everything to the Petitioner to review while the Petitioner was in custody.

Counsel recalled that the Petitioner claimed to have committed the robbery in order to repay a debt. However, Counsel "never got to the point of being able to establish that as a factual matter." Counsel also was concerned that the debt resulted from illegal conduct, information which might prove harmful to the Petitioner's case in the jury's eyes.

On cross-examination, Counsel acknowledged that the Petitioner's statement to the police was "damning" and stated that it "dictated everything [they] did at trial." For that reason, he filed a motion to suppress, which was the second motion to suppress because the Petitioner's initial lawyer also had filed a motion to suppress. Counsel raised as grounds for suppression that, during the custodial interrogation, the Petitioner had requested counsel, but the interrogation nevertheless had continued.

Counsel stated that he was familiar with the United States Supreme Court case that ruled unconstitutional the police practice of interrogating suspects in custody before issuing Miranda warnings and then, after issuing the Miranda warnings, obtaining a second incriminating statement. Counsel also was aware that this practice had been used by the local police department. Counsel did not recall the Petitioner telling him that he had been interrogated while in custody *before* being given his Miranda warnings. Counsel testified, "it would shock me that [the Petitioner] had discussed a fact scenario just like that one in the Supreme Court and I had just walked away from it. It would shock me." Counsel added, "I can't believe I would have had that conversation and not taken note of that issue." Counsel explained that he was well aware of this issue because another police officer "does exactly that." Later in his testimony, Counsel reiterated, "I don't recall [the Petitioner] ever having discussion with me about him giving an inculpatory statement on the way to the police station, an un-Mirandized [statement]." Counsel acknowledged such a discussion could have occurred but asserted, "I was aware of the issue at the time and it boggles my mind to believe that I would have been told that and ignored the issue."

Counsel agreed that the prosecutor's argument to the jury that it was "time to tell [the Petitioner] that, [they], as a community, are not going tolerate this kind of behavior" was objectionable. Counsel also agreed that the prosecutor's argument that it was time for the

jury "to tell [the Petitioner] that he is a murderer and a robber, the voice of this county, Hamilton County, the voice of St. Elmo, these actions are against the law and unacceptable" was objectionable. Counsel agreed that argument aimed at inflaming the jury was improper. Counsel acknowledged that he did not raise many objections during the prosecutor's closing argument, explaining that he was "more conservative with [his] objections than a lot of other criminal lawyers." Asked about other specific statements the prosecutor made during closing arguments, Counsel responded,

> You know, these things, you deal with them as you hear them. You hear it, you figure out what you think you need to do about it, how you can deal with it most effectively. In each instance, I dealt with what I heard in the way that I felt I was being most effective in his case.

Counsel agreed that he began the defense's closing argument "by pointing out that the [prosecution's] attempt to elicit emotion showed holes in the State's case."

Counsel stated that the defense strategy was to pursue a conviction of a lesser-included offense of first degree murder. He recalled discussing the potential defense of duress with the Petitioner. He anticipated proof of the Petitioner's claim that he committed the crime in response to threats to be admitted through the Petitioner's statement. He was not aware of other proof available to substantiate the Petitioner's claim. He did not recall discussing with the Petitioner the possibility of hiring a defense expert to "explicate to the jury how drug dealers operate when they've been ripped off or some of the power dynamics and potential threats relating to ripping off drug dealers." Counsel explained, "I understood what [the Petitioner] was saying and I understood what he wanted the jury to hear, but the fact of the matter is that as a legal defense, he wasn't close to duress." Counsel added, "I was not going to put myself in a position of establishing his role as a drug dealer by calling witnesses to that effect to present a legally unsustainable defense." Counsel testified that he did not request a jury instruction on duress because "[t]here was not factual proof in the record to support duress and [he] didn't introduce proof to support duress because it couldn't be legally supported." As to the elements of the duress defense, Counsel stated, "There certainly wasn't an immediate threat."

The Petitioner testified that, after he determined to turn himself in, he was picked up by Detective Freeman in an unmarked car. Det. Freeman handcuffed the Petitioner, placed him in the car, and then transported the Petitioner to the police station, a trip that lasted thirty to forty minutes. The Petitioner claimed that, during the drive, Det. Freeman questioned him both about his personal life and "regarding [the Petitioner's] activities in the case." Det. Freeman had not given the Petitioner his Miranda warnings.

The Petitioner testified that Det. Freeman first asked him about a previous robbery and whether he went into that store with a gun. The Petitioner told him that he had participated in a previous robbery and that he had been by himself. Det. Freeman then asked him about the instant robbery and whether the Petitioner had gone into the store with a gun. The Petitioner told him that he did not remember. Det. Freeman then asked him if he had left a water bottle on the counter of the store, and the Petitioner told him that he had. Det. Freeman continued to question him about the instant robbery, and the Petitioner "told him that [he] did commit the robbery." He also told the detective that he had had a gun. Det. Freeman asked the Petitioner about shooting the victim, and the Petitioner told him that he shot the victim twice. Upon further questioning, the Petitioner told Det. Freeman that he took the cash register and the surveillance tape out of the store; that he was wearing the clothes in which he committed the robbery; and that he would give Det. Freeman the gun and the items he had taken out of the store. Once they arrived at the police station, Det. Freeman told him that he "needed . . . to just repeat everything that [he] had said . . . inside the car." Inside the station, the Petitioner was given his <u>Miranda</u> warnings, and he signed a waiver.[3]

The Petitioner testified that he told Counsel about the initial questioning during the car ride. According to the Petitioner, Counsel did not ask him if he had been "<u>Mirandized</u>" but said, "oh, that's something we might have to look into."

The Petitioner testified that, prior to the two robberies he committed, a drug dealer had put a $10,000 bounty on him. He told Counsel about this and also provided the names of several persons who could corroborate this information to Counsel's private investigator. None of those persons were called to testify on his behalf.

On cross-examination, the Petitioner testified that he also told his first trial lawyer about Det. Freeman questioning him during the car ride. He stated that he did not know the name of the person who had put a bounty on him. He explained that the person threatened him directly but that he did not know the person's name. The threat was made within a month prior to the robbery.

Alex Freeman, a long-time friend of the Petitioner's, testified that, prior to the Petitioner's trial, Counsel's private investigator spoke with him about the Petitioner's charges. Freeman told the investigator the following:

I heard from guys that was coming in the detention center [where Freeman was] and from several phone calls that I was making on the streets or whatever

---

[3] The Petitioner's statement that was admitted into evidence at the trial was obtained after the Petitioner had received and waived his <u>Miranda</u> warnings.

that [the Petitioner] was in trouble with a guy from . . . the south area of the city where his grandma stayed at and he owed a lot of money and that if he don't pay the money back, that they going to kill his grandma, set the house on fire while she's in there, and then they were going to get him.

Freeman stated that he advised the Petitioner about these threats about two to three weeks before the robbery. The Petitioner told him, "I got to get this money because I love my grandmama." Freeman explained that the Petitioner's grandmother had raised him. The Petitioner sounded "scared." The investigator told Freeman that they would contact him if they wanted him to testify, but they never did. Freeman stated that he had been willing to testify.

On cross-examination, Freeman stated that he did not know who was behind the threats, but "the guy that supposedly had the threat was like, not going to say wealthy, but he had enough money to make things happen if he wanted them to happen."

At the conclusion of proof, the post-conviction court took the matter under advisement and subsequently issued a comprehensive written order denying relief. As to the Petitioner's claim that Counsel was ineffective for failing to pursue the suppression of the Petitioner's statement on the grounds that it was taken in violation of <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), the post-conviction court specifically refused to accredit the Petitioner's testimony that he told Counsel that Det. Freeman had questioned him in the car prior to advising the Petitioner about his <u>Miranda</u> rights. Accordingly, the post-conviction court concluded that the Petitioner had failed to establish by clear and convincing evidence that Counsel had performed deficiently in this regard. As to the Petitioner's claim that Counsel was ineffective in failing to object to portions of the State's closing arguments, the post-conviction court concluded that the Petitioner had established neither deficient performance nor prejudice. As to the Petitioner's claim that Counsel performed deficiently in failing to adduce proof that the Petitioner had acted under duress, the post-conviction court determined that this defense had not been available at trial and, therefore, that prejudice had not been established.

In this appeal, the Petitioner contends that the post-conviction court erred in denying relief. The Petitioner raised numerous grounds for post-conviction relief in his *pro se* petition. However, in his opening brief to this Court, filed by appointed counsel, only three issues were raised and supported by argument, citations to legal authority, and references to the record. <u>See</u> Tenn. R. App. P. 27(a). Although appellate counsel attempted to address the remaining issues by referring to the Petitioner's petition and his supporting *pro se* memorandum of law, this method of issue inclusion is ineffective and results in a waiver of the remaining issues. <u>See</u> Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as

waived in this court."). Appellate counsel's attempt to remedy his prior waiver by addressing these issues in his reply brief also is to no avail. As this Court has made clear,

> A reply brief is limited in scope to a rebuttal of the argument advanced in the appellee's brief. An appellant cannot abandon an argument advanced in his brief and advance a new argument to support an issue in the reply brief. Such a practice would be fundamentally unfair as the appellee may not respond to a reply brief.

Caruthers v. State, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991). Accordingly, we will address only those issues properly raised in the Petitioner's opening brief.

## Standard of Review

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by "clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

## Analysis

*Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[4] Both the United States Supreme Court and the Tennessee Supreme Court have

---

[4] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth
(continued...)

recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103 (2006); Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our Supreme Court has explained that:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466

[4](...continued)
Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

In this case, the Petitioner contends that Counsel was ineffective because he failed to pursue suppression of the Petitioner's statement to the police on the grounds that his statement was taken in violation of the Fifth Amendment as construed in Missouri v. Seibert, 542 U.S. 600 (2004). In Seibert, a plurality of the Supreme Court held inadmissible a defendant's post-Miranda confession because the police had first obtained a pre-Miranda confession, rendering the subsequent Miranda warnings ineffective. Id. at 616-17. See also State v. Dailey, 273 S.W.3d 94, 110 (Tenn. 2009) (reversing first degree murder conviction on basis that defendant's post-Miranda statement had been taken in violation of the Fifth Amendment as explicated by Seibert). Counsel could have performed deficiently in this respect, however, only if the Petitioner had made Counsel aware of the first, unwarned interrogation about which he testified at the post-conviction hearing.

Counsel testified at the post-conviction hearing that he did not recall the Petitioner telling him about an unwarned interrogation and, further, that he would have been "shocked" had he not pursued suppression on the basis of a Seibert violation had he been so informed because he was well aware of the issue. The only proof that the Petitioner had so informed Counsel was the Petitioner's own testimony. The post-conviction court specifically declined to accredit the Petitioner's testimony on this point, however, citing four reasons: (1) in the Petitioner's recorded statement, admitted at his trial, the Petitioner replied affirmatively in response to Det. Freeman's question, "So this is the first . . . time you've talked about it?"; (2) Counsel's failure to recall being told about a previous unwarned interrogation; (3) the Petitioner's failure to call his first trial lawyer at the post-conviction hearing to corroborate the Petitioner's claim that he also told his initial lawyer about the first, unwarned

interrogation; and (4) the Petitioner's inability to remember when he told Counsel about the first, unwarned interrogation and his failure to "remind" Counsel about it during Det. Freeman's testimony at trial to the contrary.

We give deference to the post-conviction court's factual findings about witness credibility. See Momon, 18 S.W.3d at 156. Moreover, the evidence does not preponderate against the post-conviction court's findings on this issue. See id. Accordingly, we hold that the post-conviction court did not err in refusing to find deficient performance in this regard. The Petitioner is not entitled to relief on this basis.

We also agree with the post-conviction court that the Petitioner failed to establish ineffective assistance of counsel with respect to Counsel's limited objections to the State's closing arguments. As this Court has recognized, "[t]he decisions of a trial attorney as to whether to object to opposing counsel's arguments are often primarily tactical decisions." Derek T. Payne v. State, No. W2008-02784-CCA-R3-PC, 2010 WL 161493, at *15 (Tenn. Crim. App. Jan. 15, 2010), perm. app. denied (Tenn. May 11, 2010). In this case, Counsel testified that he deliberately chose not to object to certain portions of the State's closing argument, alleged by the Petitioner to be improper. Moreover, as noted by the post-conviction court, Counsel testified that he chose to address the State's argument through his own closing argument by "try[ing] to defuse [the prosecutor's argument] by alerting the jury to [the argument's] emotional and manipulative nature." Finally, this Court has reviewed the prosecutor's closing arguments at trial. We conclude that, based on the five factors this Court uses for determining whether allegedly improper argument is grounds for a new trial, see Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976),[5] the Petitioner would not have been entitled to relief even had Counsel preserved objections and raised the issue on direct appeal. As our supreme court has made clear, an appellate court may not "overturn a verdict on the basis of a prosecutor's improper argument unless the impropriety affected the verdict." State v. Jordan, 325 S.W.3d 1, 65 (Tenn. 2010). Our review of the State's closing arguments convinces us that no alleged impropriety within the arguments affected the verdict rendered in the Petitioner's trial. Accordingly, the Petitioner has failed to demonstrate that

---

[5] These five factors are as follows:

1. The conduct complained of viewed in context and in light of the facts and circumstances of the case. 2. The curative measures undertaken by the [trial] court and the prosecution. 3. The intent of the prosecutor in making the improper statement. 4. The cumulative effect of the improper conduct and any other errors in the record. 5. The relative strength or weakness of the case.

Judge, 539 S.W.2d at 344.

he was prejudiced by Counsel's alleged deficiency in this regard. The Petitioner is not entitled to relief on this basis.

Lastly, the Petitioner contends that he is entitled to a new trial because Counsel failed to develop his defense of duress. Our criminal code provides that duress

> is a defense to prosecution where the person or a third person is threatened with harm that is present, imminent, impending and of such a nature to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. The threatened harm must be continuous throughout the time the act is being committed, and must be one from which the person cannot withdraw in safety. Further, the desirability and urgency of avoiding the harm must clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness.

Tenn. Code Ann. § 39-11-504(a) (2006). A review of this statute clearly demonstrates that the Petitioner did not adduce clear and convincing proof at the post-conviction hearing establishing that he had a viable defense of duress at the time of trial. Accordingly, we agree with the post-conviction court that Counsel was not deficient in failing to pursue this theory of defense. The Petitioner is not entitled to relief on this basis.

## Conclusion

For the reasons set forth above, we affirm the judgment of the post-conviction court. This matter is remanded for the correction of the judgment orders of conviction as set forth in this Court's opinion resolving the Petitioner's direct appeal. See Charles Nash, 2009 WL 2461178, at *1 n.1.


_____
JEFFREY S. BIVINS, JUDGE